**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------- X
PATRICK GUIDICE, *in his fiduciary capacity as Trustee*
*for the I.B.E.W. Local 1049 Craft Annuity Fund, in his*
*fiduciary capacity as Trustee for the I.B.E.W. Local 1049*
*Health and Welfare Fund the I.B.E.W. Local 1049 Line*
*Clearance Tree Trimming Skill Improvement Fund, in his*
*fiduciary capacity as Trustee for the I.B.E.W. Local 1049*
*Vacation Fund, in his fiduciary capacity as Trustee for the*
*I.B.E.W. Local 1049 Brotherhood Fund, and as Business*
*Manager of the International Brotherhood of Electrical*
*Workers Local Union No.1049,*

                  *Plaintiffs,*

             -against-

  ALL RELIABLE SERVICES, INC.,

               *Defendant.*
----------------------------------------X

**REPORT AND**
**RECOMMENDATION**
23-cv-7575 (NJC)(JMW)

**A P P E A R A N C E S:**

    Carol G. Dell, Esq.
    Katherine Meredith Morgan, Esq.
    **Holm & O'Hara, LLP**
    3 West 35th Street, 9th Floor
    New York, NY 10001-2204
    *Attorneys for Plaintiffs*

    *No Appearance by Defendant*

**WICKS**, Magistrate Judge:

Plaintiffss Patrick Guidice, in his fiduciary capacity as a Trustee of the I.B.E.W. Local

1049 Craft Annuity Fund ("Annuity Fund"), the I.B.EW. Local 1049 Health and Welfare Fund

("Health and Welfare Fund"), the I.B.E.W. Local 1049 Line Clearance Tree Trimming Skill

Improvement Fund ("LCTT Skill Improvement Fund"), the I.B.E.W. Local 1049 Vacation Fund

("Vacation Fund"), and the I.B.E.W. Local 1049 Brotherhood Fund ("Brotherhood Fund")

(collectively the "Funds"), and as Business Manager of the International Brotherhood of

1

Electrical Workers Local Union No. 1049 ("Local 1049") commenced this action against Defendant All Reliable Services ("ARS") on October 11, 2023, alleging breach of Collective Bargaining Agreements ("CBAs") between the parties, and violations of the Employee Retirement Income Security Act ("ERISA") and the Labor-Management Relations Act ("LMRA"). (ECF No. 1.)

After ARS failed to respond to the Complaint or otherwise appear in this action, Plaintiffs sfiled a Motion for Default Judgment against it. (ECF No. 15.) Now before the Court, on referral from the Hon. Nusrat J. Choudhury, is Plaintiffs' Motion for Default Judgment against ARS. (ECF No. 15; Electronic Order dated August 16, 2024.)  For the reasons stated herein, the undersigned respectfully recommends Plaintiffs' Motion for Default Judgment (ECF No. 15) be **GRANTED**.

## BACKGROUND

### I. *Factual Background*

#### A. *The Parties*

The following facts derive from Plaintiffs' Complaint unless otherwise noted. (ECF No. 1.) The Funds are jointly trusteed multiemployer plans established pursuant to various collective bargaining agreements and by trust indentures.  (*Id.* at ¶ 4.) The Funds are the administrator of the ERISA Plans (the "Plans"). (*Id.*) Under the CBAs, signatory employers, including ARS, are required to remit the required contributions, as well as summaries of their payroll records. (*Id.*) In addition, the Funds collect assessments from certain employees covered by the CBAs, including for the Brotherhood Fund. (*Id.*) Local 1049 is a labor organization whose membership includes electrical workers who perform line clearance tree trimming work on electrical transmission and distribution systems. (*Id.* at ¶ 5.) Plaintiff Patrick Guidice is a Trustee of the Funds and the Business

Manager of Local 1049. (*Id*. at ¶ 7.)

Defendant ARS is Nevada corporation, and authorized to do business in New York, with its offices and principal places of business located at: (i) 8122 Easton Road, Suite 115, Ottsville, Pennsylvania 18942, (ii) 44 Fink Drive, Ottsville, Pennsylvania 18942, and (iii) 159 Hampton Point Drive, Suite 3, St. Augustine, Florida 32092, and service of process address listed as 28 Liberty Street, New York, New York 10005. (*Id*. at ¶ 8.) ARS is an "employer . . . engaged in the construction business." (*Id*. at ¶ 9.)

## B.    *The CBAs*

On behalf of ARS, Eric Bray ("Bray"), Vice President, executed a Letter of Assent to the Line Clearance Tree Trimming Labor Agreement between Asplundh Tree Expert Company ("ATEC"), Green Velvet Landscape Contractors, Inc. ("GVLC"), Harder Tree Services, Inc. ("HTS"), IPC Contracting Corporation ("ICC"), Lewis Tree Service, Inc. ("LTS"), and Local 1049 for the period March 29, 2015 through March 31, 2018, including any approved amendments thereto, and any subsequent approved agreements (the "2015 CBA"). (*Id*. at ¶ 10.) Bray executed a subsequent agreement between Local Union 1049, and ARS, ATEC, GVLC, HTS, ICC, and LTS for the period of April 1, 2018 through April 2, 2022 (the "2018 CBA"). (*Id*. at ¶ 11.) On behalf of ARS, John McCarthy, Vice President, additionally executed a subsequent agreement between Local Union 1049, and ARS, ATEC, GVLC, HTS, ICC, and East Hills Metro, Inc., for the period of April 2, 2022 through January 3, 2026. (the "2022 CBA"). (*Id*. at ¶ 12.)

The 2015 CBA, the 2018 CBA, and the 2022 CBA (the "CBAs") govern the rates of pay and working conditions of individuals employed by ARS performing work covered under the CBAs. (*Id*. at ¶ 13.) Specifically, under the CBAs, ARS was required to:

- Pay wages and wage supplements in the form of fringe benefit contributions to the Funds for all employees employed by ARS and covered by the CBAs, from the first day of

employment forward at the rates specified in the CBAs. (*Id*. at ¶ 16.)

- Deduct a portion of its employees' wages in the form of dues and various assessments and remit those employee deductions to Local 1049 for all employees performing work covered by the CBAs, at a rate specified in Local 1049's bylaws. (*Id*. at ¶ 17.)

- To submit the contributions payment and payroll report to Local 1049 no later than fifteen (15) calendar days following the end of the month in which the contributions were earned. (*Id*. at ¶ 19, 27.)

- To make a contribution of an amount specified in the CBAs for each hour worked by each employee into the "Craft Division of Local 1049 Health and Welfare Fund." (*Id*. at ¶ 18.)

- To make a contribution of a percentage of the gross wages as specified in the CBAs for each hour worked by each employee into the "IBEW Local 1049 Craft Division Annuity Fund." (*Id*. at ¶ 26.)

- To make a contribution of twenty-seven cents ($.27) for each employee into the "IBEW Local 1049 Line Clearance Tree Trimming Skill Improvement Fund." (*Id*. at ¶ 36.)

- To deduct ten cents ($.10) of each employee's hourly wage, from each employee's net pay, and remit the payment and report to the Fund to be known as the "IBEW Local 1049 Brotherhood Fund." (*Id*. at ¶ 56.)

- To make a contribution of 5% gross wages for each hour worked by each employee into the "IBEW Local 1049 Vacation Fund." (*Id*. at ¶ 45.)

Effective April 3, 2022, the CBA was revised to replace the obligations under the Vacation Fund with a paid time off policy. (*Id*. at ¶ 57.) The 2022 CBA specifically provides states "earned time off that remains unused at the end of the calendar year will be cashed out at the employee's rate of pay existing on December 31 [of that year]" (hereafter, "Unused PTO"). (*Id*. at ¶ 59.) Pursuant to the CBAs, ARS must make payment of unused earned time off that remains at the end of the previous calendar year no later than January 31 of the following year." (*Id*. at ¶ 60.) The 2022 CBA provides that, "in the event of a layoff, the employee and the Union Office will receive two (2) working days' notice, in writing, in advance of a layoff or employees shall receive sixteen (16) hours straight time pay in lieu thereof" (hereafter, "Layoff Pay"). (*Id*. at ¶ 61.)

The Trustees of the Funds adopted the CBAs and Declarations of Trust for the Funds

4

(collectively, the "Trust Agreements"), which give the Trustees the power to demand, collect, and receive employer payments, and to examine the payroll records of each Employer whenever such examination is deemed necessary. (*Id*. at ¶¶ 21-22, 29-32, 38-41, 47-52.) The Trustees of the Funds additionally adopted the Collection, Delinquency and Audit Procedures (the "CDA Procedures") for the Funds, which provide that "[i]f the Employer fails to submit required reports when they are due, the Trustees or their agents are permitted to compute the sum due for any month by adding ten percent (10%) to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer." (*Id*. at ¶¶ 23, 33, 42, 53.) Pursuant to the CDA Procedures, ARS is required:

- To produce appropriate documentation in order for the Auditor to perform the audit, including, but not limited to "W-2 and W-3 forms, UC-2 forms and unemployment payroll filings, any and all payroll registers and journals both internal and external, time sheets and time records, employee earnings records, job cost records, certified payroll records, remittance report (all Funds), job descriptions, and general ledger reports, as well as any and all records specified in the applicable trust agreement. (*Id*. at ¶¶ 25, 35, 44, 55.)

- In the event the Funds are compelled to resort to litigation to collect contributions owed, to pay interest on the unpaid contributions at the rate of 12%, plus an amount equal to the greater of the amount of the interest charges on the unpaid contributions or liquidated damages of 20% of the unpaid contributions, reasonable attorney's fees, auditing/accounting fees and costs of the action and such other legal or equitable relief as the court deems appropriate under ERISA. (*Id*. at ¶¶ 24, 34, 43, 54.)

### C.    *ARS's Failure to Pay Benefits, Permit a Complete Audit, and Pay Unused PTO and Layoff Pay*

Since on or about January 1, 2017 to date, Plaintiffs allege ARS has failed to: (i) submit full payment of fringe benefit contributions to the Funds and dues to Local 1049 for employees performing work covered by the CBAs, (ii) to permit a complete audit of its books and records, and (iii) to provide members of Local 1049 with their Unused PTO and Layoff Pay upon their layoff from employment with ARS. (*Id*. at ¶¶ 62.) At the direction of the Trustees, the Funds' auditor, Kobgo Associates, Inc. ("Kobgo"), attempted to conduct an audit examination of ARS for

the period January 1, 2017 through December 31, 2020. (*Id*. at ¶ 63.) On June 14, 2022, Kobgo notified Plaintiffs' Counsel, Holm & O'Hara LLP ("H&O"), that ARS was not responding to requests to schedule an audit examination, and that the audit period would be extended through March 31, 2022. (*Id*. at ¶ 64.)

By letters dated June 27, 2022, September 27, 2022, September 28, 2022, Plaintiffs: (i) demanded that ARS cooperate in the audit examination of its books and records for the period January 1, 2017 through March 31, 2022 (*id.* at ¶ 65), (ii) that ARS make full payment of fringe benefit contributions for the period July 2022 through August 2022 (*id.* at ¶ 67), and (iii) notified ARS of various outstanding issues, including the failure to pay contributions, failure to pay vacation time for one member, and the failure to pay laid-off Local 1049 members their Unused PTO and Layoff Pay. (*Id*. at ¶ 68.) On October 24, 2022, Kobgo notified H&O that ARS had begun cooperating with the audit examination. (*Id*. at ¶ 69.) That same day, H&O, on behalf of the Funds, demanded that ARS submit payment for delinquent contributions, dues, and assessments due and owing to the Funds for the period June 2022 through August 2022. (*Id*. at ¶ 70.)

On October 25, 2022, Local 1049 filed a grievance against ARS for the failure to pay the Unused PTO and Layoff Pay to the Local 1049 members who were laid off by ARS on September 9, 2022 (the "Grievance"). (*Id*. at ¶ 71.) The Funds subsequently received remittance reports from ARS, without payment, for the months June 2022, July 2022, and August 2022, and the audit period was ultimately extended through December 31, 2022. (*Id*. at ¶ 79.) Counsel at the time for ARS, Spencer Dreier with Phillips Nizer LLP, contacted H&O with regard to the unpaid contributions and the Grievance, and settlement negotiations took place between the months of November 2022 and May 2023. (*Id*. at ¶¶ 78-81.)  Dreier advised that ARS was coordinating with the Long Island Power Authority ("LIPA") and the Public Service Enterprise Group ("PSEG") in

order to facilitate payment to the Funds and Local 1049 for all outstanding claims related to the premature cancellations of ARS' work on Long Island and New Jersey. (*Id*. at ¶ 78.) However, a settlement was never reached and ARS stopped cooperating in the audit. (*Id*. at ¶¶ 81-84.)[1]

Plaintiffs assert ARS is in violation of ERISA and the CBAs by failing to remit contributions to the Funds in the amount of $416,260.41 for the period June 2022, July 2022, and August 2022, based on remittance reports prepared and submitted to the Funds by ARS, without payment. (*Id*. at ¶ 86.) Therefore, the Plaintiff Funds assert they are entitled to the remaining unpaid contributions from ARS for the period for the period June 2022, July 2022, and August 2022 in the amount of $416,260.41, pursuant to ERISA and the Agreement. (ECF No. 16 at 17, ¶ 93.) Plaintiff Funds assert they are additionally entitled to:

- Interest on the ERISA Contributions that were found to be due and owing to the Funds, pursuant to the CDA Procedures and ERISA, calculated at the rate of twelve percent (12%) per annum from the date they were due through the date they were paid – amounting to a total of $80,853.72. (*Id*. at ¶ 94.)

- The greater of additional interest on the ERISA contributions that were found due and owing, or liquidated damages of twenty percent (20%) on the amount of ERISA contributions found due and owing – amounting to a total of $83,252.08. (*Id*. at ¶ 95.)

Plaintiffs additionally assert ARS is in violation of the CBAs by failing to remit dues and assessments to Local 1049 in the amount of $19,384.35 for the period June 2022, July 2022, and August 2022 based on remittance reports prepared and submitted by ARS, without payment. (ECF

---

[1] Plaintiffs eventually directed H&O to file the instant Complaint given ARS' failure to cooperate in the audit examination. (ECF No. 16 at 14, ¶ 73.) H&O filed the Complaint on October 11, 2023. (ECF No. 1.) H&O and Spencer Dreier with Phillips Nizer LLP entered a Stipulation to extend ARS' time to answer the Complaint in order "to allow time to complete the audit examination and engage in further settlement discussions." (*See* ECF No. 16 at 14, ¶ 74; ECF No. 9.) H&O contacted Dreier twice to discuss the records still needed to complete the audit examination, and, on December 8, 2023, Kobgo advised H&O that ARS was no longer responding to requests to continue the audit examination. (*Id*. at ¶ 77.) H&O also requested Kobgo reach out to ARS directly, per Dreier's direction, however, January 8, 2024, Kobgo advised ARS had not responded to his inquiries. (*Id*. at ¶ 78.) To date, ARS has failed to fully cooperate with the audit examination and has failed to provide all requested records for the audit examination for the period January 1, 2017 through December 31, 2022. (*Id*. at ¶ 79.)

No. 1 at ¶ 88.) Therefore, Plaintiff Local 1049 is entitled to unpaid dues and assessments from ARS in the amount of $19,384.35 pursuant to the CBAs. (ECF No. 16 at 18, ¶ 97.) Plaintiffs contend they are additionally entitled to pre-judgment interest on the dues and assessments that are due and owing, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date they were due through the date they were paid – amounting to a total of $2,879.20. (*Id.* at ¶ 98.)

By letter dated September 9, 2022, ARS notified Local 1049 that all of ARS' Local 1049 employees would be placed in layoff status as of September 9, 2022. (*Id.* at ¶ 66.) ARS did not give two (2) working days' notice to Local 1049 members or the Union office in advance of the layoff. (ECF No. 16 at 19, ¶ 100.) To this end, Plaintiffs allege ARS is in violation of the CBAs and the LMRA by failing to provide adequate notice or pay Layoff Pay to the Local 1049 members who were laid off by ARS on September 9, 2022 (ECF No. 1 at ¶¶ 61, 90), and that Plaintiff Local 1049 is entitled to Layoff Pay from ARS for its members in the amount of $34,784.64 pursuant to the CBAs. (*Id.* at ¶ 91.) Plaintiffs contend they are also entitled to pre-judgment interest on Layoff Pay for its members, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date due through to the date paid – amounting to a total of $4,966.10. (ECF No. 16 at 20, ¶ 104.)

Plaintiffs additionally contend ARS did not pay out Unused PTO to the Local 1049 members who were laid off on September 9, 2022, and, therefore, ARS is in violation of the CBAs and the LMRA by failing to pay Unused PTO to the Local 1049 members who were laid off by ARS on September 9, 2022. (*Id.* at ¶¶ 59-60, 92.) Based on each members' classification, rate of pay, seniority, and PTO allowance pursuant to the CBAs, Plaintiff Local 1049 claims it is entitled to payment of Unused PTO from ARS for its members in the amount of $217,023.60 pursuant to

the Agreement, as well as pre-judgment interest on Unused PTO for their members, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date due through to the date paid – amounting to a total of $23,278.0. (ECF No. 16 at 20-21, ¶¶ 108-109.)

*Finally*, Plaintiffs claim that since November 1, 2022, the Funds have accrued attorney's fees for legal work performed for the filing and prosecution of this lawsuit against ARS in the amount of $31,244.50 and costs and expenses in the amount of $502.15, which are specifically attributable to: (i) Plaintiffs' efforts to prepare all pleadings filed in this matter, (ii) Plaintiffs' efforts to reach settlement with ARS, and ARS's counsel, and (iii) the preparation of the motion papers for the instant Motion for Default Judgment. (*Id*. at 21, ¶¶ 110-113.) Pursuant to the CDA Procedures and ERISA, Plaintiffs maintain they are entitled to "attorneys' fees in the amount of $31,244.50 and costs and expenses in the amount of $502.15, for a total amount of $31,746.65 as accrued through April 10, 2024" and request this Court to order ARS to pay any additional attorney's fees that accrue in the course of the enforcement of the default judgment order. (*Id*. at 23, ¶¶ 124-125.)

Overall, Plaintiffs seek judgment against ARS in the total amount of $914,428.76 as follows:

    (i)    delinquent contributions in the amount of $416,260.41 for the period June 2022 through August 2022;

    (ii)    delinquent dues in the amount of $19,384.35 for the period June 2022 through August 2022;

    (iii)    interest on the delinquent contributions in the amount of $80,853.72 for the period June 2022 through August 2022;

    (iv)    interest on the delinquent dues and assessments in the amount of $2,879.20 for the period June 2022 through August 2022;

(v)    liquidated damages for the delinquent ERISA contributions in the amount of $83,252.08 for the period June 2022 through August 2022;

(vi)    Layoff Pay in the amount of $34,784.64; interest on Layoff Pay in the amount of $4,966.10;

(vii)    Unused PTO in the amount of $217,023.60;

(viii)    interest on the Unused PTO in the amount of $23,278.01;

(xi)    attorney's fees in the amount of $31,244.50; and

(x)    costs and expenses in the amount of $502.15,

in accordance with the CBAs and ERISA. (*Id.* at 24, ¶¶ 126.) With respect to the audit for the period January 1, 2017 through December 31, 2022 pursuant to the CBAs and ERISA, Plaintiffs additionally seek: an Order to compel the production of all books and records necessary to perform a complete audit examination for the period January 1, 2017 through December 31, 2022 (the "Audit"). (*Id.* at 15, ¶ 80; ECF No. 1 at ¶ 117.)

## II.    *Procedural History*

The Complaint was filed on October 11, 2023 (ECF No. 1), and a Summons was issued as to ARS on October 12, 2023. (ECF No. 5.) ARS was served on November 7, 2023. (ECF No. 8.) ARS's answer was due November 27, 2023. (*Id.*) On November 27, 2023, the parties filed a Joint Motion for Extension of Time to File an Answer, attaching a Stipulation and Proposed Order to Extend Time to Answer the Complaint. (ECF No. 9.)[2] The undersigned granted the Motion, extended the time in which ARS was to answer or otherwise respond to the Complaint until January 29, 2024, and subsequently set an Initial Conference with the parties for April 9, 2024. (*See* Electronic Order dated November 28, 2023; ECF No. 10.) ARS failed to answer or otherwise

---

[2] The Stipulation and Proposed Order was signed by Counsel for Plaintiffs and Spencer Dreier with Phillips Nizer LLP, listed as "Attorneys for Defendant," however, neither Dreier nor anyone else from his firm has filed a Notice of Appearance on behalf of ARS to date. (*Id.*)

respond to the Complaint.

Plaintiffs requested a Certificate of Default on February 28, 2024 (ECF No. 11), which was entered by the Clerk of the Court on the same day. (ECF No. 12.) In light of the Clerk's Entry of Default (ECF No. 12), the undersigned directed Plaintiffs' Counsel to either move for default judgment or voluntarily dismiss the case by April 1, 2024. (*See* Electronic Order dated February 28, 2024.) Plaintiffs moved for an extension of time to file their motion for default judgment on April 8, 2024 (ECF No. 14), which was granted by the undersigned on April 9, 2024. (*See* Electronic Order dated April 9, 2024.) Plaintiffs filed their Motion for Default Judgment against ARS on April 10, 2024 (ECF Nos. 15-17), which was referred by District Judge Choudhury to the undersigned for a Report and Recommendation. (Electronic Order dated August 16, 2024.)

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. *First*, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b). The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL 18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023).

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a

default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm.*, 2016 WL 3365313, at *4).

However, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court must therefore ensure: (i) Plaintiffs satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; (ii) Plaintiffs' allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and (iii) Plaintiffs' request for damages is adequately supported.

It is against this backdrop that the undersigned analyzes the motion for default judgment.

## **DISCUSSION**

## I.    *__Procedural Compliance__*

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1)-(3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA,

and (C) that the individual defaulting defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendants' residence or business address. E.D.N.Y. Local R. 55.2(a)(1)-(3).[3]

With respect to the non-military affidavit, before a default judgment can be entered for a plaintiff, the Servicemembers Civil Relief Act ("SCRA") commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). The SCRA requirement is inapplicable where, as here, the sole defaulting defendant, ARS, is a corporation, rather than an individual. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

Here, the motion against ARS complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 15); (2) a memorandum of law (ECF No. 16); (3) affidavits and exhibits to support Plaintiffs contentions (*see* ECF Nos. 16-1-21); and (4) a proposed order detailing the proposed judgment. (ECF No. 15-1.) The motion further complies

---

[3] Recently added under the Local Rules is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c).

with Local Rule 55, as Plaintiffs properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on February 28, 2024 (ECF No. 15-6) and a declaration that ARS, being a corporation, is not an infant, in the military, or an incompetent person. (ECF No. 16 at 2, ¶3) Plaintiffs have also filed an affidavit of service of the requisite documents as to ARS via first class mail (ECF No. 17) to their Motion.

*Finally*, Plaintiffs adhered to Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and basis for the element of damages.  E.D.N.Y. Local R. 55.2(c).  As to damages, Plaintiffs submit itemized breakdowns of the amount of: (i) Unpaid Contributions due to the Funds, (ii) Interest on Unpaid Contributions Calculated at 12% per annum, (iii) Liquidated Damages on Unpaid ERISA Contributions, (iv) Unpaid Dues and Assessments due to Local 1049, (v) 9% Interest on Unpaid Dues & Assessments (as per CPLR §§ 5001 and 5004), (vi) Unpaid Layoff Pay, (vii) 9% Interest on Unpaid Layoff Pay, (viii) Unpaid Paid Time Off, (xi) 9% Interest on Unpaid Paid Time Off, and (xii) Statutory Attorney's Fees and Costs (29 U.S.C. §§ 1145 and 1132(g)) (ECF No. 15-2), and a Declaration of Katherine M. Morgan, Esq., (ECF No. 16) detailing Plaintiffs' entitlement to unpaid contributions, unpaid dues and assessments, unpaid layoff pay, unpaid paid time off,  interest, liquidated damages, and attorney's fees and costs. Accordingly, the undersigned finds that the Motion for Default Judgment is procedurally proper and turns to the merits of the Motion.

## II.    ***Default Factors***

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship,*

*Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors counsels toward an entry of default judgment where, as here, ARS has wholly failed to appear and present any sort of defense, and Plaintiffs are left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

### III.    _Liability_

####    A.    _Unpaid Contributions, Dues and Assessments_

ERISA requires an employer to make contributions to multiemployer benefit plans under a CBA in accordance with the CBA's terms. *See LaBarbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 134 (2d Cir. 2003); *see also* 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall ... make such contributions in accordance with the terms and conditions of such plan or such agreement."); *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189–90 (2d Cir. 2015) (Under ERISA, the corporate defendant is "liable for unpaid contributions, interest, liquidated damages provided under the plan, attorney's fees and costs, and any other legal or equitable relief the court deems appropriate"). To establish a violation of § 1145, Plaintiffs must plausibly allege that ARS is: (i) an employer; (ii) bound by a CBA that required payment of contributions; and (iii) failed to make those contributions. *See Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308 (RPK)(SJB), 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022).

Likewise, Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). "Under section 301, an employer may be held liable for failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement." *Sullivan v. A & Z Constr. Co.*, No. CV20122825NGGMDG, 2016 WL 4991541, at *3 (E.D.N.Y. Mar. 11, 2016), *report and recommendation adopted*, No. 12CV2825NGGMDG,

2016 WL 5061104 (E.D.N.Y. Sept. 16, 2016); *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *6 (E.D.N.Y. Feb. 25, 2020) ("Because a violation of the CBA establishes a violation of Section 301 of the LMRA, [ARS] may be held liable for failing to pay assessments and remit dues to Local 1[049] under the LMRA.").

Plaintiffs allege that ARS is an "employer" within the sections 3(5) and 515 of ERISA, § 1002(5) and 1145 (ECF No. 16 at 6, ¶ 25; ECF No. 1 at ¶ 9 ), and that ARS entered into the CBAs, and that pursuant to the CBAs, ARS was required to pay contributions, dues, and assessments to the Funds and Local 1049, but failed to meet its contribution, dues and assessment requirements pursuant to the CBAs. *See* ECF No. 1 at ¶¶ 16-19, 26-27, 36, 45, 56. Therefore, ARS "continued to be obligated to make contributions, [dues, and assessments,] and became bound to the terms of the [CBAs]." *Sullivan*, No. CV20122825 (NGG)(MDG), 2016 WL 4991541, at *2 (collecting cases).

The Delinquency Spreadsheet depicting ARS's Delinquency based on June, July and August 2022 Reports (ECF No. 16-17) reflects that: (i) an outstanding balance of $145,019.11 in contributions owed pursuant to the CBA was to be paid to the Annuity Fund, (ii) an outstanding balance of $264,911.55 in contributions owed pursuant to the CBA was to be paid to the Health and Welfare Fund, (iii) an outstanding balance of $6,329.75 in contributions owed pursuant to the CBA was to be paid to the LCTT Skill Improvement Fund, (iv) an outstanding balance of $17,040.00 in dues and assessments owed pursuant to the CBA was to be paid to Local 1049, and (v) an outstanding balance of $2,344.35 in dues and assessments owed pursuant to the CBA was to be paid to the Brotherhood Fund.

The June 27, 2022, September 27, 2022, and October 24, 2022, demand letters to ARS indicate that ARS "fail[ed] to comply with the audit examination and to remit all contributions,

dues and assessments due and owing to the Funds [in] violation of the CBA." *See* ECF No. 16-12; *see also* ECF No. 16-13 (notifying ARS that it is "delinquent in Fringe Benefit Contributions to the I.B.E.W. Local 1049 Fringe Benefit Funds for the period of July and August 2022."); ECF No. 16-15 (demanding that ARS remit, by November 1, 2022, all delinquent contributions, dues and assessments owed to the Funds for the period June, July through August 2022). ARS's failure to make the delinquent contributions is further evidenced by the remittance reports. *See* ECF No. 16-16; *see also Sciascia v. Prime Protective Servs., Inc.*, No. 13-CV-0800, 2014 WL 940721, at *7 (E.D.N.Y. Mar. 11, 2014) (finding plaintiffs sufficiently proved damages for unpaid contributions based on the submission of remittance reports).

Overall, the Court finds the well-pleaded allegations establish that ARS breached the CBAs, and, that Plaintiffs have sufficiently alleged the ARS's liability for unpaid benefits contributions, dues, and assessments as follows: (i) $145,019.11 for delinquent contributions pursuant to the CBAs with the Annuity Fund; (ii) $264,911.55 for delinquent contributions pursuant to the CBAs with the Health and Welfare Fund; (iii) $6,329.75 for delinquent contributions pursuant to the CBAs with the LCTT Skill Improvement Fund; (iv) $17,040.00 for unpaid dues and assessments to the Local 1049; and (v) $2,344.35 for unpaid dues and assessments to the Brotherhood Fund. *See* ECF No. 16-17; *see also Loc. 1992 Pension Fund v. A-G Elec. Supply Co. Inc.*, No. 21CV03441 (JMA)(JMW), 2023 WL 5003618, at *6 (E.D.N.Y. July 19, 2023), *report and recommendation adopted sub nom. Loc. 1922 Pension Fund v. A-G Elec. Supply Co. Inc.*, No. 21CV03441 (JMA)(JMW), 2023 WL 5002809 (E.D.N.Y. Aug. 4, 2023) ("The well-pleaded allegations establish that A-G Electrical breached the CBA as well as the Settlement Agreements and Participation Agreement."); *Sullivan*, No. CV20122825 (NGG)(MDG), 2016 WL 4991541, at *3 ("It is undisputed that A&Z Construction did not pay

certain contributions and dues check-offs that were due during the audit period. Thus, defendant is liable to the Funds and the Union under ERISA and the LMRA."); *Argila v. Mach Grp., Inc.,* 724 F. Supp. 3d 107, 109 (E.D.N.Y. 2024), *on reconsideration in part,* No. 22-CV-4374 (KAM) (MMH), 2024 WL 3261783 (E.D.N.Y. July 2, 2024) ("[P]laintiffs established Mach's liability under ERISA and LMRA by showing that Mach is an employer who failed its obligations under a collective bargaining agreement to make contributions to the funds and remit union dues.").

   **B.    _Layoff Pay and Unused PTO_**

As stated, section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a); *see also Tand v. Solomon Schechter Day Sch. of Nassau Cnty.,* 324 F. Supp. 2d 379, 382 (E.D.N.Y. 2004) (quoting *Dougherty v. American Tel. and Tel. Co.,* 902 F.2d 201, 203 (2d. Cir.1990)) ("Section 301 of the LMRA, among other things, 'governs actions by an employee against an employer for breach of a collective bargaining agreement.'"). "Suits arising under section 301 include 'those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge.'" *Id.* (quoting *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562 (1976)). The relevant contract here is the 2022 CBA, which was revised to require ARS to pay Layoff Pay and Unused PTO to Local 1049 members who were laid off on September 9, 2022, and to give them two working days' notice in advance of the layoff. *See* ECF No. 1 at ¶ 60-61, 90.

*First*, Plaintiffs allege that ARS failed to provide adequate notice or pay Layoff Pay to the Local 1049 members who were laid off by ARS on September 9, 2022, as evidenced by: (i) the letter dated September 9, 2022, in which ARS notified Local 1049 that all of ARS' Local 1049

employees would be placed in layoff status as of September 9, 2022 (ECF No. 16-18), and (ii) the spreadsheet detailing the Local 1049 members who were laid off by ARS on September 9, 2022, as well as their rate of pay. *See* ECF No. 16-19. To this end, Plaintiff Local 1049 alleges it is entitled to Layoff Pay from ARS for its members in the amount of $34,784.64 pursuant to the 2022 CBA. *See* ECF No. 1 at ¶ 91.

*Second*, Plaintiffs alleges ARS failed to pay Unused PTO to the Local 1049 members who were laid off by ARS on September 22, 2022 (*see* ECF No. 1 at ¶¶ 59-60, 92), as evidenced by the spreadsheet detailing the Local 1049 members who were laid off by ARS on September 9, 2022, as well as their classification, rate of pay, year of seniority and PTO allowance. *See* ECF No. 16-20.[4] Based on each members' classification, rate of pay, seniority, and PTO allowance pursuant to the Agreement, Plaintiff Local 1049 claims it is entitled to payment of Unused PTO from ARS for its members in the amount of $217,023.60 pursuant to the CBA. *See* ECF No. 16 at 20, ¶ 108. Accordingly, the well-pleaded allegations establish that ARS breached the 2022 CBA, and that Plaintiffs have sufficiently alleged the ARS's liability under the CBAs and LMRA for $34,784.64 in Layoff Pay and $217,023.60 in Unused PTO to Plaintiff Local 1049.

**C**.    ***Failure to Permit Audit***

Section 209 of the ERISA "requires an employer to 'maintain records with respect to each of [its] employees sufficient to determine the benefits due or which may become due to such employees'" and furnish information necessary for plaintiff to create necessary reports. *Trs. of the Local 807 Labor-Management Pension Fund v. Showtime on the Piers, LLC,* No. 21-CV-3677-

---

[4] "Since no records were provided by ARS as to the amount of PTO each worker had already used, despite many requests by H&O for ARS to provide those records," Plaintiffs calculated Unused PTO "using the Union's records at the maximum amount of PTO allowance each member could receive based on the provisions under the [CBA]." *See* ECF No. 16 at 20, ¶ 107.

PKC-JRC, 2023 U.S. Dist. LEXIS 38293, at *7 (E.D.N.Y. Mar. 6, 2023) (quoting 29 U.S.C. § 1059(a)(1)); *see also* 29 U.S.C. § 185(a) (an employer who violates a contract with a labor organization is liable under LMRA).

Here, the Trustees of the Funds adopted Trust Agreements, which give the Trustees the power to demand, collect, and receive employer payments, and to examine the payroll records of each Employer whenever such examination is deemed necessary. *See* ECF No. 1 at ¶¶ 21-22, 29-32, 38-41, 47-52. The Trustees of the Funds additionally adopted the CDA Procedures for the Funds, which require ARS:

> To produce appropriate documentation in order for the Auditor to perform the audit, including, but not limited to "W-2 and W-3 forms, UC-2 forms and unemployment payroll filings, any and all payroll registers and journals both internal and external, time sheets and time records, employee earnings records, job cost records, certified payroll records, remittance report (all Funds), job descriptions, and general ledger reports, as well as any and all records specified in the applicable trust agreement.

*See id.* at ¶¶ 25, 35, 44, 55; *see also* ECF No. 16-11 (outlining the collection, delinquency, and audit procedures for each of the Funds).

The undersigned finds Plaintiffs adequately allege that ARS failed to comply with the CBAs, the Trust Agreements, and CDA Procedures by failing and refusing to permit access to its own books and records for all worked performed by its bargaining unit employees. *See* ECF No. 1 at ¶ 96 ("The Funds have repeatedly requested access to all of ARS' books and records necessary to conduct a complete audit examination, but ARS has failed to cooperate in allowing the Funds to inspect all necessary books and records."); *see also* ECF No. 16-12 (ARS' failure to comply with the audit examination and to remit all contributions, dues and assessments due and owing to the Funds is a violation of the CBA.").

Accordingly, Plaintiffs have established a breach of the CBAs and violations of the LMRA and ERISA, and the undersigned recommends this Court issue an Order directing ARS to "permit

and cooperate with Plaintiffs in an audit of [ARS's] books and records to determine if it is making full payment to the Funds as required." *Trustees of Bldg. Trades Educ. Benefit Fund v. Demand Elec. Inc.*, No. 23-CV-01924 (JMW), 2024 WL 3875942, at *4 (E.D.N.Y. Aug. 19, 2024); *see also Mason Tenders Dist. Counsel Welfare Fund v. F.E.S./M&V Contracting Corp.,* 94 Civ. 4750 (JSM), 1996 U.S. Dist. LEXIS 565, at *4 (S.D.N.Y. Jan. 22, 1996) (ordering defendants to allow accountants, auditors, and Funds representatives to inspect and audit books and records and further ordering defendants to pay attorney's fees and costs).

## IV.   *Damages*

Plaintiffs seek the following remedies upon entry of a default judgment:

(i)    ordering defendant to submit to an audit by providing the Funds all of the pertinent books and records for examination for the period January 1, 2017, through December 31, 2022; and

(ii)   awarding Plaintiffs judgment against defendant in the amount of $914,260.41 which includes the following:

    (a)    unpaid contributions in the amount of $416,260.41 for the period June 2022 through August 2022;

    (b)    12% interest on the outstanding contributions for the period June 2022 through August 2022 in the amount of $80,853.72;

    (c)    20% liquidated damages on the unpaid ERISA contributions for the period June 2022 through August 2022 in the amount of $83,252.08;

    (e)    unpaid dues and assessments for the period June 2022 through August 2022 in the amount of $19,384.35;

    (e)    9% interest on the outstanding dues and assessments for the period June 2022 through August 2022 in the amount of $2,879.20;

    (f)    unpaid Layoff Pay in the amount of $34,784.64;

    (g)    9% interest on the outstanding Layoff Pay in the amount of $4,966.10;

    (h)     unpaid Paid Time Off in the amount of $217,023.60;

(i)    9% interest on the outstanding Paid Time Off in the amount of $23,278.01;

(j)    attorney's fees in the amount of $31,244.50; and

k)    costs in the amount of $502.15.

*See* ECF No.15-1 at 2.

### A.    *Interest and Liquidated Damages*

Pursuant to ERISA, if an employer fails to make contributions in accordance with the CBA, the court must award the plan damages as follows:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions or

(ii) liquidated damages provided for under the plan in an amount not in excess  of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

*Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(g)(2)).

Further, "although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l*

*Union of Operating Eng'rs , Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.,* No. 18CIV5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019), *report and recommendation adopted sub nom. Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Eng'rs v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) ("*Annuity*") (citation omitted).

*First*, Plaintiff is entitled to interest for both unpaid contributions and unpaid dues and assessments, as well as for Layoff Pay and Unused PTO, under both ERISA and the LMRA, respectively. Under ERISA, interest is "determined by using the rate provided under the plan." *See* 29 U.S. Code § 1132(2); *Daniello v. Planned Sys. Integration Ltd.*, No. 07-CV-1729 (RRM)(VVP), 2009 WL 2160536, at *6 (E.D.N.Y. July 17, 2009) (quoting 29 U.S.C. § 1132(g)(2)) ("The Fund also seeks interest and liquidated damages, both of which are available under 29 U.S.C. § 1132(g)(2). In determining interest on unpaid contributions, ERISA directs courts to use the 'rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.'").

"With respect to the Non-ERISA plans, the Second Circuit permits an award of prejudgment interest for LMRA claims at the [C]ourt's discretion." *Finkel v. Triple A Group*, 708 F. Supp. 2d 277, 287 (E.D.N.Y. 2010) (*citing Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp.*, 534 F.2d 422, 446–47 (2d Cir. 1975)). "In awarding interest [on unpaid dues], a court may look to state law to determine an appropriate rate." *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873 (ENV) (JO), 2011 WL 1100111 at *4 (E.D.N.Y. Mar. 22, 2011). Relevant here, it is well established that "a nine percent annual interest rate on the delinquent dues and assessments pursuant to §§ 5001 and 5004 of the New York Civil Practice Law and Rules ("CPLR")" is "an appropriate interest rate on the unpaid dues and

assessments owed" to the labor organization. *Sullivan*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *7; *see also Bricklayers Ins. & Welfare Fund v. Verse Inc.*, No. 12-CV-4271 (FB) (JMA), 2013 WL 4883966 at *6 (E.D.N.Y. Sept. 11, 2013) (finding nine percent in accordance with CPLR § 5004 and an appropriate interest rate on unpaid dues an assessments); N.Y. C.P.L.R. 5001(a), 5004(a) (Plaintiffs may recover interests "upon a sum awarded because of a breach of performance of a contract" at a rate of "nine per centum per annum.").

Pursuant to the CBAs, the Plaintiff Funds are entitled to: (i) interest on the ERISA Contributions that were found to be due and owing to the Funds, calculated at the rate of twelve percent (12%) per annum from the date they were due through the date they were paid, (ii) pre-judgment interest on the dues and assessments that are due and owing, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date they were due through the date they were paid, (iii) pre-judgment interest on Layoff Pay for its members, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date due through to the date paid, and (iv) pre-judgment interest on Unused PTO for Local 1049's members, calculated, as per N.Y. Civ. Prac. L. & R. §§ 5001 and 5004, at the rate of nine percent (9%) per annum from the date due through to the date paid. *See* ECF No. 16 at 17-21, ¶ 94, 98, 104, 109. The interest on the contributions is calculated as follows:

> [B]y converting ARS' failure to pay the contributions to a daily rate, which was then charged from the date the payments became due—which, under the [CBAs], is the fifteenth (15th) day of the month following the month in which the hours were worked—to April 10, 2024, the date of filing [Plaintiffs'] Motion [for Default Judgment]. Therefore, on the delinquent contributions which totaled $416,260.41, Plaintiffs are owed interest in the amount of $80,853.72.

*Id* at ¶ 94. The interests on the dues and assessments are calculated as follows:

> [B]y converting ARS' failure to pay the dues and assessments to a daily rate, which was then charged from the date the payments became due—which, under the Agreement, is the fifteenth (15th) day of the month following the month in which the hours were worked—

to April 10, 2024, the date of filing [Plaintiffs'] Motion [for Default Judgment]. Therefore, on the delinquent dues and assessments, which totaled $19,384.35, Plaintiffs are owed interest in the amount of $2,879.20.

*Id*. at 18-19, ¶ 98. The interest on the Layoff Pay is calculated as follows:

[B]y converting the Layoff Pay to a daily rate, which was then charged from the date of the layoff, September 9, 2022, through to April 10, 2024, the date of filing this Motion. Therefore, on the delinquent Layoff Pay which totaled $34,784.64, Plaintiffs are owed interest in the amount of $4,966.10.

*Id*. at 19-20, ¶ 104. *Finally*, the interest on the Unused PTO is calculated as follows:

[B]y converting the Unused PTO to a daily rate, which was then charged from the due date of January 31, 2023, through to April 10, 2024, the date of filing this Motion. Therefore, on the delinquent Unused PTO which totaled $217,023.60, Plaintiffs are owed interest in the amount of $23,278.01.

*Id*. at 20-21, ¶ 109. Accordingly, Plaintiff has sufficiently supported its request for interest on unpaid contributions, dues, and assessments. *See e.g., Daniello*, No. 07-CV-1729 RRM/VVP, 2009 WL 2160536, at *6 (awarding a 18% interest rate for unpaid contributions and noting it was "higher than the average" of 10%).

*Second*, Plaintiffs are entitled to additional damages in an amount equal to the greater of "(i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions." 29 U.S.C. §§ 1132(g), 1451(b). Here, the amount of interest on the ERISA contributions found due and owing based on the remittance reports ($80,853.72) is less than the liquidated damages for the same delinquent contributions ($83,252.08) – therefore, the Funds are entitled to liquidated damages of twenty percent (20%) in the amount of $83,252.08. *See e.g., Sullivan*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *7–8 (quoting 29 U.S.C. § 1132(g)(2)(C)) ("In addition to interest on unpaid contributions, ERISA provides for 'an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the

unpaid contributions].' [I]nterest on unpaid contributions is $10,520.67. Twenty percent of the unpaid contributions amounts to $11,671.59. Accordingly, [it is] recommend[ed] that Plaintiffs be awarded the greater of the two, $11,671.59, in liquidated damages on unpaid contributions.").

Thus, the Court respectfully recommends granting Plaintiffs' request for delinquent contributions, interest and liquidated damages on the unpaid contributions, unpaid dues and assessments, interest on the unpaid dues and assessments, unpaid Layoff Pay and Unused PTO, and interest on unpaid Layoff Pay and Unused PTO as follows: (i) unpaid contributions in the amount of $416,260.41 for the period June 2022 through August 2022; (ii) 12% interest on the outstanding contributions for the period June 2022 through August 2022 in the amount of $80,853.72; (iii) 20% liquidated damages on the unpaid ERISA contributions for the period June 2022 through August 2022 in the amount of $83,252.08; (iv) unpaid dues and assessments for the period June 2022 through August 2022 in the amount of $19,384.35; (v) 9% interest on the outstanding dues and assessments for the period June 2022 through August 2022 in the amount of $2,879.20; (vi) unpaid Layoff Pay in the amount of $34,784.64; (vii) 9% interest on the outstanding Layoff Pay in the amount of $4,966.10; (viii) unpaid Paid Time Off in the amount of $217,023.60; and  (xi) 9% interest on the outstanding Paid Time Off in the amount of  $23,278.01.

**C**.      ***Attorneys' Fees and Costs***

Plaintiffs seek attorneys' fees in the amount of $31,244.50 as well as $502.15 in costs totaling $31,746.65 accrued since November 1, 2022, for the "filing and prosecution of this lawsuit against ARS." ECF No. 16 at 21, ¶ 110. Plaintiffs contend a portion of the attorneys' fees and costs in this case are attributable to "Plaintiffs' efforts to prepare all pleadings filed in this matter," "Plaintiffs' efforts to reach settlement with ARS, and ARS' counsel" and "preparation of the motion papers for [the instant] default judgment and all necessary exhibits in support of this

motion." *Id*. at ¶ 111-113. ERISA expressly provides for a mandatory award of "reasonable attorney's fees and costs of the action, to be paid by the defendant[.]"  29 U.S. Code § 1132(g)(2)(D); *see Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement.").

This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec*., 651 F.3d 299, 307 (2d Cir. 2011).  When considering applications for attorneys' fees, the appropriate guidepost is for courts to apply the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr. 14, 2022).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)  In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate.  *Id*. Plaintiffs' Counsel H&O has provided billing records with an itemized breakdown of hours and descriptions of each task conducted.  *See* ECF No. 16-21.

As of July 1, 2015, Plaintiffs and H&O agreed to services at hourly rates as follows: (i) $250.00 for partners, (ii) $200.00 for associates with three (3) or more years of experience, (iii) $185.00 for associates with fewer than three (3) years of experience, (iv) $125.00 for juris doctors, and (v) $80.00 for law clerks and paralegals. ECF No. 16 at 22-23, ¶ 121. As of March 1, 2023, Plaintiffs and H&O agreed to services at hourly rates as follows: (i) $295.00 for partners, (ii) $250.00 for associates with three (3) or more years of experience, (iii) $235.00 for associates with fewer than three (3) years of experience, (iv) $135.00 for juris doctors, and (v) $90.00 for law

clerks and paralegals. *Id.* at ¶ 122. The case was worked on by the following individuals at the

above hourly rates for the period of November 1, 2022 to the date of Plaintiffs' Motion for Default

filing: (i) Katherine M. Morgan, Esq. (Partner)[5], (ii) Carol G. Dell, Esq. (Partner)[6], (iii) M. Aliza

Chesler, Esq. (Associate), (iv) Elizabeth Shaw (Paralegal/Law Clerk), (v) Paulina Albarracin

(Paralegal/Law Clerk), and (vi) Adriana Floridia (Finance Manager). *Id.* at 21-22, ¶ 117-20. Those

records reflect that H&O worked a total of 146.40 hours on this case,[7] as follows:

| Dates | Name | Position | Rate | Hours Billed | Total |
|---|---|---|---|---|---|
| 11/30/22 – 3/1/23 | Katherine M. Morgan, Esq. | Partner | $250.00 | 11.8 | $2,950.00 |
| 3/1/23 – 4/10/24 | Katherine M. Morgan, Esq. | Partner | $295.00 | 41.5 | $12,242.50 |
| 11/30/22 – 3/1/23 | Carol G. Dell, Esq. | Partner | $250.00 | .5 | $125.00 |
| 3/1/23 – 4/10/24 | Carol G. Dell, Esq. | Partner | $295.00 | 6.9 | $2,035.50 |
| 11/30/22 – 3/1/23 | M. Aliza Chesler, Esq. | Associate | $185.00 | 3.8 | $703.00 |
| 3/1/23 – 4/10/24 | M. Aliza Chesler, Esq. | Associate | $235.00 | 22.8 | $5,358.00 |
| 11/30/22 – 3/1/23 | Elizabeth Shaw, J.D. | (Paralegal/Law Clerk) | $125.00 | 2.8 | $350.00 |
| 3/1/23 – 4/10/24 | Elizabeth Shaw, J.D. | Paralegal/Law Clerk | $135.00 | 52.9 | $7,141.50 |
| 3/1/23 – 4/10/24 | Paulina Albarracin | Paralegal/Law Clerk | $90.00 | 2.6 | $234.00 |

[5] Katherine Morgan is duly admitted to practice before the state courts of New York since March 2014, and the United States District Courts for the Eastern and Southern Districts of New York since January 2015. *Id.* at 22, ¶ 17. She has been a partner of H&O since 2021. *Id.*

[6] Carol G. Dell is duly admitted to practice before the state courts of New York since 2001 and is also admitted to practice before the United States District Courts for the Eastern, Southern, and Northern Districts of New York, and the Supreme Court of the United States. *Id.* at ¶ 17. She has been a member of H&O since 2007 and has specialized in Labor Law and ERISA litigation since 2001. *Id.*

[7] This number was calculated by the Court using records provided by Plaintiffs. *See* ECF No. 16-21. Plaintiffs did not provide the Court with a total number of hours worked.

| 3/1/23 – 4/10/24 | Adriana Floridia | Finance | $135.00 | .8 | $108.00 |
|---|---|---|---|---|---|
| | | | | 146.40 | $31,247.50 |

*First*, the undersigned finds the hourly rates requested by Plaintiffs "are in line with or below similar rates for unpaid contributions ERISA cases in this district." *Sullivan.*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *8 (finding H&O's former "hourly rates of: $270.00 for Carol Dell, a partner who has practiced Labor Law and ERISA litigation since 2001; $220.00 for Katherine M. Morgan, an associate who has specialized in Labor Law and ERISA litigation since 2014; and $95.00 each for two paralegals and one law clerk" reasonable); *see also Annuity*, No. 18CIV5773 (AMD)(ST), 2019 WL 4603805, at *13 ("[C]ounsel's $380 per hour billing rate and alleged seven and-a-half hours of service expended conform to the standard for reasonable attorney's fees in this District for this type of [ERISA] action"); *Trustees of Loc. 7 Tile Indus. Welfare Fund v. Caesar Max Tile Corp.,* No. 13-CV-924 (RRM)(VMS), 2014 WL 991723, at *10 (E.D.N.Y. Mar. 13, 2014) ("For the Eastern District of New York, reasonable hourly rates in ERISA cases have ranged from $200.00 to $350.00 an hour for partners and $90.00 an hour for paralegals."); *Gesualdi v. Magnolia Pro Trucking Inc.,* No. 11 Civ. 4082(ADS)(AKT), 2012 WL 4036119, at *9 (E.D.N.Y. Aug. 20, 2012) (noting that courts in this district "have routinely approved hourly rates ranging from ... $100–$300 for associates and $70–$90 for paralegals," in ERISA unpaid contributions cases).

To this end, considering the hourly rates found reasonable in ERISA actions in this district, Plaintiffs' Counsels' hourly rates are well within the reasonable range in light of their background and experience. *See, e.g., Gesualdi v. Bestech Transp., LLC,* No. 14-CV-1110 (JS)(ARL), 2022 WL 866853, at *3 (E.D.N.Y. Mar. 23, 2022) (collecting cases) ("Courts in this district typically

award hourly rates ranging from $300 to $450 per hour for partners in ERISA cases"). Because the undersigned finds the proposed rates reasonable and in line with the standard rates for ERISA litigators in this District, it is respectfully recommended this Court award attorneys' fees at the rates suggested by Plaintiffs.

*Second*, "[a]fter finding the hourly rate reasonable for ERISA default cases in this jurisdiction, the [undersigned] now turns to the reasonableness of the hours expended." *Sullivan*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *9.  "If the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court may make reductions to individual entries or elect to account for such over-billing in an across-the-board percentage deduction." *Manzo v. Sovereign Motor Cars, Ltd.*, 08-cv-1229 (JG) (SMG), 2010 WL 1930237 at *8 (E.D.N.Y. May 11, 2010). While the 146.40 hours requested here "are extremely high for ERISA default judgement cases," *see Argila v. Mach Grp., Inc.,* 724 F. Supp. 3d 107, 109 (E.D.N.Y. 2024), *on reconsideration in part*, No. 22-CV-4374 (KAM) (MMH), 2024 WL 3261783 (E.D.N.Y. July 2, 2024) (noting courts in this district have found the range of hours reasonably spent litigating an ERISA default judgment case to be roughly twenty to thirty), "given the complexity of the damage calculations, the detailed submissions prepared by Plaintiffs' attorneys, and their successful efforts to settle with Defendant[]," the undersigned finds "such use of time was not excessive, redundant, otherwise unnecessary." *Sullivan*, No. 18CV5618 (ENV)(RER), 2020 WL 9814085, at *9 (awarding H&O's $32,343.00 fee request for 149.9 hours of work in ERISA default judgment action). Accordingly, the undersigned recommends awarding attorneys' fees in the amount of $31,247.50.

As to costs, Plaintiffs "bear [] the burden of adequately documenting and itemizing the costs requested." *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2020 WL 5899881, at *14

(E.D.N.Y. Mar. 12, 2020)). Plaintiffs request $502.15 in costs comprised of "filing fees, cost of service, printing, postage, fax machine charges, and making copies." ECF No. 16 at 23, ¶ 124. "Precedent supports the inclusion of filing fees and the costs of process service as part of the damage award in an ERISA action." *See Annuity*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *15. Plaintiffs have provided documentation to support the service of process fee, filing fee, and other costs which are adequate to support their request. *See* ECF No. 16-21. Accordingly, the undersigned recommends awarding Plaintiffs $31,749.65, consisting of $31,247.50 in attorneys' fees and $502.15 in costs.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends Plaintiffs' Motion for Default Judgment (ECF No. 15) be **GRANTED** and that judgment be entered against ARS as follows:

(i)    delinquent contributions in the amount of $416,260.41 for the period June 2022 through August 2022;

(ii)    interest on the delinquent contributions in the amount of $80,853.72 for the period June 2022 through August 2022;

(iii)    liquidated damages for the delinquent ERISA contributions in the amount of $83,252.08 for the period June 2022 through August 2022;

(iv)    delinquent dues and assessments in the amount of $19,384.35 for the period June 2022 through August 2022;

(v)    interest on the delinquent dues and assessments in the amount of $2,879.20 for the period June 2022 through August 2022;

(vi)    Layoff Pay in the amount of $34,784.64;

(vii)    interest on Layoff Pay in the amount of $4,966.10;

(viii)    Unused PTO in the amount of $217,023.60;

(ix)    interest on the Unused PTO in the amount of $23,278.01;

      (x)      attorney's fees in the amount of $31,247.50; and

      (xi)     costs and expenses in the amount of $502.15,

for a **total** amount of **$914,431.76**.

It is additionally recommended that this Court issue an Order directing ARS to "permit and cooperate with Plaintiffs in an audit of [ARS's] books and records to determine if it is making full payment to the Funds as required" for the period January 1, 2017, through December 31, 2022. *Trustees of Bldg. Trades Educ. Benefit Fund*, No. 23-CV-01924 (JMW), 2024 WL 3875942, at *4.

### <u>OBJECTIONS</u>

A copy of this Report and Recommendation is being electronically served on Plaintiffs' counsel. Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendant via first-class mail and via email and promptly file proof of service on ECF **within two business days**. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further

judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:      Central Islip, New York
           January 26, 2025

**RESPECTFULLY RECOMMENDED**,


/S/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge